**Alvaro DAVILA PENA, Plaintiff,**

v.

**Gary D. MORGAN, Defendant.**

**No. 01 CIV. 3340(LAK).**

United States District Court,
S.D. New York.

July 11, 2001.

**47.** Pl. Mem. at 24–25.

**48.** 328 U.S. 408, 66 S.Ct. 1142, 90 L.Ed. 1342 (1946).

**49.** *Id.* at 431, 66 S.Ct. 1142.

**50.** *Id.*

Eric Rieder, Erin Naftali, Robinson Silverman Pearce Aronsohn & Berman LLP, New York City, for Plaintiff.

Harold F. McGuire, Jr., Arthur V. Nealon, McGuire, Kehl & Nealon, LLP, New York City, for Defendant.

## MEMORANDUM OPINION

KAPLAN, District Judge.

Plaintiff, a Colombian attorney, commenced this action in New York Supreme Court against a former client for alleged breach of a contract to compensate him for lobbying services rendered in Colombia and obtained an *ex parte* order attaching 1 million shares of defendant's restricted common stock of Globaltron Corporation. He promptly moved to confirm the attachment, whereupon defendant, a citizen of Florida, removed the action to this Court on the basis of alienage and cross-moved to dissolve the order of attachment. Subsequently, defendant moved to strike certain paragraphs of the complaint pursuant to Rule 12(f).

### The Attachment

■ By virtue of Fed.R.Civ.P. 64, the standards regarding the grounds for and confirmation or vacatur of the order of attachment are those established by the law of New York, principally Article 62 of the Civil Practice Law and Rules. In order to confirm the order and to defeat defendant's cross-motion to vacate it, plaintiff bears the burden of establishing the grounds for the attachment, the need for continuing levy and the probability that he will succeed on the merits.[1]

Defendant is domiciled and regularly resides in Florida.[2] His maintenance of a rental apartment in Manhattan for use on his frequent trips here does not alter the fact that he is a nondomiciliary residing outside the state, particularly given the absence of any showing that defendant has assets in New York sufficient to satisfy a judgment in the event plaintiff were to prevail.[3] This is a ground for attachment under CPLR § 6201, subd. 1.

■ The next issue is whether there is a continuing need for security. One of

1. N.Y. CPLR §§ 6201, 6212(a), 6223(b) (McKinney 1980).

2. *See* Morgan Aff. ¶ 4.

3. *See ITC Entertainment Ltd. v. Nelson Film Partners*, 714 F.2d 217, 221–22 (2d Cir.1983); *Strater v. Strater*, 20 A.D.2d 889, 890, 248 N.Y.S.2d 945, 946 (1st Dept.1964).

the purposes of CPLR § 6201, subd. 1, is the creation of a provisional remedy to afford a plaintiff with security for enforcement of any judgment in the plaintiff's favor.[4] While defendant's affidavit asserts that he is well able to satisfy any judgment likely to be rendered in this action, it establishes also that most of his assets are outside New York.[5] The affidavit studiously omits any statement as to where those assets are located and, for that matter, as to whether they are located in the United States. Nor does it give any assurance that assets will be kept in any jurisdictions where they readily could be applied to any judgment. Defendant's nonresident status and his evasive response to the motion on this point lead the Court to infer that there is a continuing need for security.

■■■ The question of likelihood of success on the merits is closer, in part due to uncertainty as to the meaning of that standard. In federal preliminary injunction practice, a movant obliged to establish a likelihood of success must demonstrate that the movant is more likely than not to prevail in the action. But it is not clear that the phrase means the same thing in the New York attachment context. Some cases suggest that the movant's burden is only to "establish a *prima facie* claim."[6] Others have required demonstration of a probability of ultimate success, despite the apparent presence of a *prima facie* case.[7]

Perhaps these varying expressions are reconciled best by recognition of the fact that attachment ultimately is not a matter of right, but a remedy granted in the discretion of the court.[8] The applicant's probability of success on the merits must be considered in exercising that discretion. The higher the probability of success, the more likely a court will be to confirm an order of attachment, all other things being equal. Conversely, the more dubious the probability of success, the less likely it will be to do so. But other factors are not always equal. So one of two applicants with equal chances of success on the merits may obtain, and one fail to obtain, an order of attachment based on disparities in their respective needs for such relief. In other words, once the applicant's chance of ultimate success surpasses some minimum threshold, the likelihood of his obtaining an attachment will depend on a weighing of its probability of ultimate success and its need for the relief.

In this case, much is undisputed. It is undisputed that the defendant retained plaintiff to perform lobbying services with the fee to be agreed on a success basis. Defendant then asked plaintiff to assist in seeking to persuade the relevant Colombian Ministry to revive or reissue a license to an entity called Interloop and agreed that he would give plaintiff 300,000 Globaltron shares if Interloop obtained a usable license.[9] The Ministry subsequently modi-

---

4. *Cargill, Inc. v. Sabine Trading & Shipping Co.*, 756 F.2d 224, 227 (2d Cir.1985); *see ITC Entertainment Ltd.*, 714 F.2d at 220.

5. Morgan Aff. ¶ 17.

6. *E.g., Deutsche Anlagen–Leasing GMBH v. Kuehl*, 111 A.D.2d 69, 71, 489 N.Y.S.2d 195, 197 (1st Dept.1985). *See also City of New York v. Citisource, Inc.*, 679 F.Supp. 393, 398 (S.D.N.Y.1988) (court should consider merits only if it is plain that plaintiff will fail).

7. *Noto v. Holle*, 160 A.D.2d 918, 920, 554 N.Y.S.2d 645, 647 (2d Dept.1990) (probability

of success on the merits required); *see A & M Exports, Ltd. v. Meridien Int'l Bank, Ltd.*, 207 A.D.2d 741, 616 N.Y.S.2d 621, 623 (1st Dept. 1994) (no attachment where plaintiff's case "equivocal").

8. 12 Jack B. Weinstein, Harold L. Korn & Arthur R. Miller, New York Civil Practice § 6201.03 (2001).

9. Plaintiff does contend that there was no specific agreement as to what would constitute success. Pena Reply Aff. ¶ 31.

fied an earlier decision that had suspended the Interloop license.[10] The principal point in dispute appears to be whether the decision by the Colombian Ministry resulted in a "usable" license or, put another way, whether the Ministry's decision in fact reflected "success" as the parties used that term.[11]

 In these circumstances, plaintiff, to borrow language from the federal preliminary injunction context, has demonstrated the existence of serious questions going to the merits that are a fair ground for litigation but less than a probability of success. There appears, however, to be a strong need for security for the enforcement of any judgment he ultimately may obtain in light of defendant's out-of-state domicile, apparent lack of other assets in New York, and reticence on the question of where his assets are and whether they will remain there. Moreover, continuing the attachment in a reduced amount [12] will subject defendant to no material harm, as defendant is protected by plaintiff's undertaking and the stock is restricted so that no more than 20 percent may be sold in a given year, a period during which the case is likely to be concluded. Accordingly, even given the uncertainty of plaintiff's ultimate success, the Court, in the exercise of its discretion, concludes that an order of attachment is appropriate here. On the other hand, the amount of the attachment heretofore has been excessive.

The agreement here was to give plaintiff 300,000 shares of Globaltron stock in the event the success fee was earned. Plain-

tiff's interest, as defendant points out, would be fully protected by attachment of 300,000 shares rather than the 1 million shares subject to the levy. Plaintiff virtually concedes the point. Accordingly, the Court hereby modifies the order of attachment to provide for attachment of 300,000 of plaintiff's Globaltron shares attachment in the hands of the firm of Proskauer Rose and, as modified, confirms the order of attachment. The cross-motion to vacate or modify the order of attachment is granted to the extent of the foregoing modification and otherwise denied. The parties shall enter into a written stipulation establishing the mechanism for breaking down the 1 million share block currently subject to the order and returning 700,000 shares to the plaintiff while leaving the remaining 300,000 subject to the levy and submit it for the Court's approval on or before July 31, 2001. In default of agreement, they shall submit their respective proposed orders by that date.

### The Motion to Strike

 Defendant moves also to strike certain parts of the complaint as immaterial. Such motions are frowned upon for the obvious reason that substantial rights seldom if ever turn on whether immaterial or even scandalous matter is included in a pleading, particularly in view of the fact that pleadings in civil cases are not submitted to juries in this district.[13]

### Conclusion

In sum, the cross-motion to vacate or modify the order of attachment is granted

---

10. *Id.* ¶¶ 14–15.

11. *Compare id. with* Pena Aff., May 10, 2001, ¶¶ 3–15.
 It perhaps is debatable also whether the agreement with respect to the 300,000 shares of stock is unenforceable on the ground that the failure to define success left it too indefinite.

12. *See infra.*

13. *See, e.g., National Council of Young Israel v. Wolf,* 963 F.Supp. 276, 282 (S.D.N.Y.1997); *von Bulow by Auersperg v. von Bulow,* 657 F.Supp. 1134, 1146 (S.D.N.Y.1987).

to the limited extent set forth above and otherwise denied. The motion to confirm the order of attachment is granted to the extent that the order, as modified, is confirmed, and otherwise denied. The motion to strike portions of the complaint is denied in all respects.

SO ORDERED.